RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0356P (6th Cir.)
File Name: 01a0356p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

  No. 00-3345

ANAIBONY COLON,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-00063—Edmund A. Sargus, Jr., District Judge.

Submitted: August 8, 2001

Decided and Filed: October 5, 2001

Before: MOORE and COLE, Circuit Judges; ROSEN,
District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Steven S. Nolder, Alan J. Pfeuffer, FEDERAL
PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for

_____

[*]The Honorable Gerald E. Rosen, United States District Judge for the
Eastern District of Michigan, sitting by designation.

Appellant.  Robyn Jones Hahnert, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

————————

**OPINION**

————————

ROSEN, District Judge.  Defendant/Appellant Anaibony Colon appeals his conviction and sentence on Counts 1 and 7 of a seven-count indictment which charged him with conspiracy to distribute and possess with intent to distribute more than 500 grams of cocaine, and distribution of more than 500 grams of cocaine, respectively, arguing that the District Court erred in denying his request for a lesser-included-offense jury instruction on simple possession of cocaine.  As discussed below, we find no error with respect to the District Court's refusal to give a lesser-included-offense instruction.  Accordingly, we affirm Defendant's conviction and sentence.

## I.  *FACTUAL AND PROCEDURAL BACKGROUND*

On April 22, 1999, a seven-count indictment was filed against Defendant Anaibony Colon and two other individuals, Gabriel Medina and Ricardo Reyes.  The indictment specifically charged Colon in three of its counts: conspiracy to distribute and possess with intent to distribute more than 500 grams of cocaine (Count 1); attempt to distribute more than 500 grams of cocaine (Count 4); and distribution of more than 500 grams of cocaine (Count 7).

Colon was tried before a jury in September 1999.  After a four-day trial, the jury returned a verdict finding Defendant guilty on Count 1 (conspiracy to distribute and possess with intent to distribute cocaine) and Count 7 (distribution of cocaine).  Colon, however, was acquitted of Count 4 (attempted distribution of cocaine).

### A. *EVENTS GIVING RISE TO DEFENDANT'S INDICTMENT AND SUBSEQUENT CONVICTION*

In early January 1999, Jarra Anderson, a cooperating witness/confidential informant, identified three individuals, Gabriel Medina, Robert Santana and Ricardo Reyes, as all being involved in the sale of cocaine. Anderson explained to the Government agents that he met Medina, Santana and Reyes while he was working as a barber at Brother's Barber Shop in Columbus, Ohio. Anderson also advised the agents that he had been purchasing cocaine for several months from Medina. Anderson purchased approximately three kilograms of cocaine from Medina in November 1998, and then purchased three more kilograms from him a month later, in December 1998. Medina usually delivered the cocaine to Anderson at his apartment in the Laurel Lakes apartment complex. Anderson neither knew Appellant Anaibony Colon, nor had he heard Appellant's name mentioned by Medina, Santana, or Reyes. However, Medina testified at trial that he would contact Euclides Castillo, his main drug supplier, each time he needed cocaine, and that each time, Castillo arranged for Colon to transport the cocaine from New York to Ohio.

On February 17, 1999, Anderson, acting as a confidential informant and under law enforcement direction, contacted Medina and negotiated to buy two kilograms of cocaine. The transaction was to take place at Anderson's Laurel Lakes apartment. Prior to Medina's planned transaction with Anderson, Medina drove to Colon's apartment, which was also located at Laurel Lakes, picked up Colon, and drove him to Vincent Graphics so that he could help Medina perform janitorial services at that facility.

Colon claimed in his trial testimony that Medina told him that he needed help cleaning Vincent Graphics because he [Medina] had something else to do and he [Medina] did not have time to perform his janitorial duties. Colon denied any knowledge of a cocaine deal with Anderson. Medina, however, claimed that Colon wanted to help him clean Vincent Graphics so that he and Colon could sell Anderson

the two kilograms of cocaine later that evening. Medina testified that Colon agreed to help him clean the office because Colon was anxious for the cocaine deal to be completed that night. Medina said that if Colon did not help him, he would have been unable to arrange the delivery to Anderson that particular night.

While at Vincent Graphics, Medina received and made several cellular phone calls to Anderson discussing the sale of two kilograms of cocaine. Although Colon saw Medina make several cellular phone calls, he said he was unable to hear Medina's conversations. After Colon and Medina finished the cleaning job, Medina agreed to drive Colon home. According to Medina, he and Colon then headed to Colon's apartment to retrieve the two kilograms of cocaine to sell to Anderson.

Before Medina and Colon made it back to Colon's apartment, however, they were stopped by law enforcement officials who anticipated that Medina would be in possession of two kilograms of cocaine. During the planned traffic stop, investigating agents searched the vehicle, and a canine trained in detection of controlled substances alerted to the vehicle. However, no cocaine was found. The police did find $4,000.00 in cash that Medina later explained related to drug trafficking activity. During this stop, Colon spoke in broken English and provided a fictitious address of 1935 Cooke Road. (Colon actually lived at 5680 Roche Drive, Apartment F, Columbus, Ohio, which was only a block away from Anderson's apartment and a block away from the location of the traffic stop.) Although Medina's car and currency were impounded, neither Medina nor Colon were arrested that evening. Medina made no further contact with Anderson that night.

The next day, Medina called Anderson and told him he was no longer interested in selling him two kilograms of cocaine. Despite Anderson's efforts to press Medina to continue with the sale, Medina told Anderson he would send someone else who would act in his place. Later that day, Medina indicated

the District Court did not err in refusing to give a lesser-included offense instruction on simple possession. Accordingly, Defendant Colon's conviction and sentence are AFFIRMED.

*United States v. Sepulveda*, 102 F.3d 1313, 1317 (1st Cir. 1996); *United States v. Barrientos*, 758 F.2d 1152, 1158 (7th Cir. 1985), *cert. denied*, 474 U.S. 1062 (1986). In *United States v. Jackson, supra*, the Tenth Circuit held that simple possession was not a lesser included offense of distribution of a controlled substance explaining:

We have previously held simple possession is a lesser included offense of possession of a controlled substance with the intent to distribute. However, it does not follow that simple possession is a lesser included offense of distribution under 21 U.S.C. § 841(a)(1). Distribution means "to deliver. . . a controlled substance or a listed chemical." 21 U.S.C. § 802(11). . . Although distribution may involve the actual or constructive possession of a controlled substance, courts have construed the term "distribution" broadly to "include other acts perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price.". . . Although it may be unusual for a person to distribute a controlled substance without at least momentarily possessing the controlled substance, it is not impossible.

213 F.3d at 1296-97 (citations omitted).

We agree with the reasoning of these courts and now join them in holding that simple possession is not a lesser-included offense of distribution of a controlled substance. Although distribution may involve the actual or constructive possession of a controlled substance, "distribution" includes other acts perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price. Thus, it is possible to commit the "distribution" element of the crime without possessing the drugs themselves.

The foregoing discussion demonstrates that the elements of simple possession are not identical to the elements of distribution of cocaine or of conspiracy to possess with intent to distribute or to distribute cocaine. Therefore, we find that

to Anderson that it would be Ricardo Reyes who would be taking over the transaction. Although Reyes at first agreed to deal directly with Anderson, he refused after learning that Medina's vehicle and currency had previously been impounded. Therefore, Medina told Anderson that he would be sending someone else to do the deal, "a man who did not speak that good English." According to Medina, that reference was to Defendant Anaibony Colon.

The cocaine deal for the two kilogram sale to Anderson was resurrected a month later, in March 1999. However, Reyes, and not Medina, was the person who contacted Anderson urging him to do the deal. Anderson, still operating as a confidential source, met with Reyes several times, and ultimately agreed to purchase two to three kilograms of cocaine from him.

On March 23, 1999, Reyes agreed to deliver the cocaine to Anderson in the Big Bear parking lot in Columbus. On that date, Reyes first went to Colon's apartment and asked Colon to keep a green knapsack for him for a few hours. After Reyes left the apartment Colon testified that he opened the knapsack and found two separately packaged kilograms of cocaine. Colon opened one of the kilogram packages and removed a small quantity of cocaine, some of which he immediately used and the remainder he wrapped in a one dollar bill.

Prior to the scheduled delivery, surveillance officers followed Reyes from his residence to Colon's apartment. These officers watched as Reyes parked outside of Colon's building, and subsequently entered the building. At this time, Reyes had with him another kilogram of cocaine to add to the two which had previously been delivered to Colon's apartment in the knapsack. Reyes handed this kilogram to Colon and asked him to place it in the knapsack. Colon claimed that Reyes then asked him to carry the knapsack and accompany him in his van to an undisclosed location, and Colon agreed to do so. Colon, however, claimed he did not know the purpose of the trip to the Big Bear parking lot.

When the two men exited Colon's apartment building, Colon was observed carrying a green gym bag on his left shoulder. Both Colon and Reyes got into Reyes's van, and Reyes then drove directly to the Big Bear parking lot where the cocaine sale was to take place.

Once Anderson's car was located in the Big Bear parking lot, Reyes parked his van directly across from Anderson's car. At this time, both Reyes and Colon got out of the van. Colon stood outside of the van and appeared to be looking around the parking lot. He eventually got back inside the van in the driver's seat. Colon then used some more of the cocaine he had stolen from one of the kilogram packages. Reyes meanwhile went to Anderson's car, where he delivered to Anderson three kilograms of cocaine in the green gym bag that Colon had been observed carrying out of his apartment complex. Once the delivery was made, agents arrested Reyes and Colon.

The cocaine retrieved from the green duffle bag was tested by the DEA laboratory and found to contain 2,983 grams of cocaine of 68% purity. Three of Colon's latent fingerprints were found on the wrapping of the kilograms of cocaine. No prints of Medina or Reyes were found on any of the wrappers.

Within minutes of Colon's and Reyes' arrest, a brown Acura was found parked outside Colon's apartment complex. That particular vehicle was registered to Euclides Castillo, the supplier of the cocaine which Colon allegedly delivered to Medina.

Upon his arrest, agents found in Colon's pocket a dollar bill which contained a small quantity of cocaine; a piece of paper with the 1935 Cooke Road fake address written on it; a piece of paper with phone numbers for Medina, Santana and Reyes; and a receipt in the name of Euclides Castillo from Ed Reese's Towing in Plymouth Meeting, Pennsylvania dated March 21, 1999 for the Acura registered to Euclides Castillo. The receipt was signed by Anaibony Colon and demonstrated a direct connection between Colon and Castillo, who, as noted above, was the direct supplier of the cocaine which

(1) knowingly or intentionally distribute cocaine, and; (2) at the time of such distribution the defendant knew that the substance was cocaine.

Appellant Colon argues that although "possession" is not, under the terms of the statute, an element of the offense of actual distribution, it is difficult to see how a defendant could be convicted of actual distribution without exercising a degree of control over the drugs. In essence, what Colon presents is an "inherent relationship" approach which was expressly rejected by the Supreme Court in *Schmuck*.

As the Government points out, the crime of distribution, much like the crime of conspiracy to distribute and possess with intent to distribute, can be committed without actually possessing the controlled substance. The Government's argument is consistent with previous decisions of this circuit as well as many of the other circuits.

This Court has previously observed that a "distribution charge can conceivably be proved without proof of possession." *United States v. Stevens*, 521 F.2d 334, 337 (6th Cir. 1975). Although we only briefly touched on this issue in *Stevens*, many other circuits have expressly determined that the crime of distribution can be committed without actually ever possessing the controlled substance. In *United States v. Gore*, 154 F.3d 34, 45 (2d Cir. 1998), the Second Circuit determined that proof of distribution of a controlled substance does not necessarily include the element of possession. The court explained,

> [S]omeone who participates in a drug transaction – e.g., as a broker or armed guard – can be liable for distribution without ever possessing the drugs. . . .   While "possession" is certainly helpful in proving distribution, it is technically not a necessary element.

*Id.* at 44-45.

A number of other courts have similarly held that possession is not a necessary element of distribution. *See,*

clearly, conspiracy to distribute and/or conspiracy to possess with intent to distribute. Colon did not have to distribute or possess any cocaine to be guilty of the conspiracy. He was only required to agree with someone to commit one of those crimes. The essential element of conspiracy is that "members of the conspiracy in some way or manner, or through some contrivance, came to a mutual understanding to try to accomplish a common and unlawful plan". *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990), *cert. denied*, 498 U.S. 1093 (1991).

Other circuits that have addressed this issue have held that simple possession is not a lesser-included-offense of conspiracy to distribute and possess with intent to distribute cocaine. *United States v. Krout*, 66 F.3d 1420, 1431-1432 (5th Cir. 1995), *cert. denied*, 516 U.S. 1136 (1996); *United States v. Brown*, 604 F.2d 557, 560-61 (8th Cir. 1979); *United States v. Jackson*, 213 F.3d 1269, 1295-1296 (10th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000); *United States v. Horn*, 946 F.2d 738, 744-745 (10th Cir. 1991). As the Tenth Circuit explained in *Horn*, "[I]t is possible to conspire to commit these drug offenses [possession, possession with intent to distribute and distribution] without actually committing the offense themselves; thus it is not impossible to commit the greater offense (conspiracy) without committing the suggested lesser offenses." *Horn*, 946 F.2d at 745.

Relying on the same rationale, we now join these other circuits and hold that simple possession is not a lesser-included offense of conspiracy to distribute and possess with intent to distribute.

**b.** *Distribution*

Colon also argues that the elements of simple possession should be considered "a necessary subset" of the elements of distribution of cocaine. As stated above, a violation of 21 U.S.C. § 844(a), simple possession requires: (1) knowingly or intentionally, (2) possessing, (3) a controlled substance. *Monger*, *supra*. In comparison, a violation of 21 U.S.C. § 841(a), distribution of cocaine, requires that a defendant:

Colon allegedly delivered to Medina in Columbus, Ohio. The receipt further indicated that the Acura was in Pennsylvania two days prior to the delivery of the cocaine to Anderson by Reyes and Colon. This corresponded to recorded telephone conversations between Reyes and Anderson in which Reyes indicated that as of March 19 and March 20, 1999, he was still waiting for the cocaine to come into town.

Colon claimed that Reyes gave him the two receipts to put in his pocket. He also claimed that he picked up the card with Medina's, Santana's, and Reyes' phone numbers on it, so that he could snort cocaine off of it, and that it was merely "happenstance" that he had placed the card in his pocket.

After the arrests of Colon and Reyes, Medina was arrested, as well. Medina subsequently agreed to plead guilty to a cocaine distribution conspiracy and cooperate with authorities in return for a downward departure in sentencing. Medina explained to the authorities that he made a couple of trips for Robert Santana to New York City in order to pick up cocaine and bring it back to Columbus for distribution. It was on his first trip that Medina first met Euclides Castillo. Medina picked up the cocaine from Castillo and drove a car with the cocaine in it to Columbus for Santana.

Medina testified that in 1998, on a second trip to New York City to pick up more drugs from Castillo for Santana, Medina met Defendant Colon. On this trip, Colon, as Castillo's representative, rode with Medina back to Columbus to transport the cocaine to Santana. Medina testified that after the delivery of this shipment of cocaine to Santana's customer in Dayton, Ohio, Medina delivered the money to pay for the cocaine to Colon, and Colon subsequently took that money back to Castillo in New York. After that, Colon began transporting cocaine from New York to Santana in Columbus on a regular basis. Eventually, Colon obtained his own apartment in Columbus.

Medina admitted helping Colon obtain an apartment in Columbus, due to his limited English, but testified the information he put on the application was provided by Colon.

Specifically, Medina testified that the information which listed Colon's vehicle as the Acura Legend of Euclides Castillo, was provided by Colon. Colon blamed all of the answers on his rental application related to Euclides Castillo on Medina.

Once Colon leased the apartment on Roche Drive, the drugs were stored at that apartment until they could be distributed. Medina testified that Colon subsequently began making deliveries for Santana and Castillo from Columbus to Dayton. Medina obtained all of the cocaine he sold to Jarra Anderson from Euclides Castillo, while Colon allegedly delivered it to Medina for Castillo.

**B.    *PERTINENT PROCEDURAL BACKGROUND***

Following Defendant Colon's arraignment on the indictment, the District Court entered a Scheduling Order which, in pertinent part, directed the parties to submit any requests for jury instructions, in writing, six business days before the scheduled trial date. In compliance with the Scheduling Order, the Government filed its proposed jury instructions on July 22, 1999, ten days before the then-scheduled trial date of August 2, 1999. The August 2, 1999 trial date was continued upon motion by Defendant Colon until September 20, 1999. As of the commencement of trial in September 1999, however, Defendant had not filed any requested jury instructions.

The trial began as scheduled on September 20, 1999, and the government rested its case-in-chief on September 22, 1999. A preliminary charge conference was held prior to the commencement of testimony on September 22, 1999. At that conference, Colon did not request, or propose, a lesser-included-offense jury instruction. The final charge conference was held at noon on September 22, 1999, prior to the presentation of the defense's case. Again, defense counsel did not request a lesser-included-offense instruction.

At the conclusion of all testimony but prior to closing arguments on September 22, 1999, defense counsel for the

as otherwise authorized by this subchapter or subchapter II of this chapter. . . .

21 U.S.C. § 844(a).

Pursuant to 21 U.S.C. §§ 846 and 841(a), it is unlawful for

Any person [to knowingly or intentionally] attempt or conspire to [manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense a controlled substance]. . . .

21 U.S.C. §§ 846, 841(a).

There is clearly no identity of elements in the two crimes. A violation of 21 U.S.C. § 844(a), simple possession, requires: (1) knowingly or intentionally, (2) possessing, (3) a controlled substance. *See United States v. Monger, supra*, 185 F.3d at 577. By contrast, to establish a drug conspiracy, the government must prove (1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy. *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996), *cert. denied* 519 U.S. 1134 (1997), citing *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991).

In *United States v. Monger, supra*, we held that simple possession is a lesser-included-offense of possession with intent to distribute. However, in the present case, Defendant Colon was not charged with the substantive crime of "possession with intent to distribute cocaine." Instead, Colon was charged in Count 1 with **conspiracy** to distribute and possess with intent to distribute more than 500 grams of cocaine. Simple possession has a required element that need not be proven to be convicted of the conspiracy charge. That element is one of "possession."

Colon focuses his argument on the possession aspect of the charge and fails to acknowledge that the charge is **not** possession with intent to distribute, but instead ***conspiracy*** to distribute and possess with intent to distribute, or stated more

However, even if we were to find that Defendant had made a "proper request," as discussed below, Defendant still would not be entitled to the relief requested because he cannot establish that the elements of the lesser offense are identical to part of the elements of either of the greater offenses with which he was charged.

**2.   *The Elements of Simple Possession Are Not Identical to Part of the Elements of the Crimes Charged***

In order to determine whether Colon was entitled to an instruction on a lesser-included-offense requires a determination of whether the elements of the lesser offense are identical to some of the elements of the greater offense. *United States v. Monger*, *supra*. Thus, in this case, the question is whether the elements of simple possession are identical to any of the elements of conspiracy to distribute and possess with intent to distribute over 500 grams of cocaine, and/or distribution of more than 500 grams of cocaine.

**a.   *Conspiracy***

Appellant Colon argues that the elements of simple possession are identical to part of the elements of conspiracy to distribute and possess with intent to distribute over 500 grams of cocaine. The Supreme Court has instructed that in making the determination of whether there is an identity of elements of a lesser and greater offense for purposes of determining whether a lesser-included offense instruction is appropriate, courts are to compare the statutory elements of the offenses in question. *See Schmuck v. United States, supra.*

21 U.S.C. § 844(a) sets forth the parameters of the crime of "simple possession":

It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner while acting in the course of his professional practice or except

first time orally requested a jury instruction for a lesser-included-offense of simple possession. The court denied that request. Accordingly, when the jury was charged following closing arguments, no lesser-included-offense instruction was given.

The jury ultimately returned a verdict finding Defendant Colon guilty on Count 1 (conspiracy to distribute and possess with intent to distribute cocaine) and Count 7 (distribution of cocaine). Colon, however, was acquitted of Count 4 (attempted distribution of cocaine).

Colon was subsequently sentenced to 151 months incarceration to be followed by a five-year period of supervised release. Colon now appeals his conviction and sentence arguing that the District Court erred in denying his request for a lesser-included-offense jury instruction on simple possession of cocaine.

## II. *ANALYSIS*

### A.   *STANDARD OF REVIEW*

The District Court's decision to deny Appellant's request for a lesser-included-offense jury instruction is reviewed for abuse of discretion. *United States v. Ursery*, 109 F.3d 1129, 1136 (6th Cir. 1997).

### B.   *LESSER-INCLUDED-OFFENSE   JURY INSTRUCTION*

A criminal defendant is entitled to an instruction on a lesser-included-offense if: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser. *United States v. Monger*, 185 F.3d 574, 576 (6th Cir. 1999), citing *United*

*States v. Moore*, 917 F.2d 215, 228 (6th Cir. 1990), *cert. denied*, 499 U.S. 963 (1991).

As we recently stated in *United States v. Waldon,* 206 F.3d 597 (6th Cir. 2000)*, cert. denied*, 531 U.S. 881 (2000),

> [I]f a defendant asks for a lesser included offense instruction, it is generally reversible error not to give it. A defendant is not entitled to a lesser offense instruction, however, unless he can meet both prongs of a two-part test: (1) the elements of the lesser offense are a subset of the elements of the charged offense; and (2) the evidence would allow a rational jury to find the defendant guilty of the lesser offense but not guilty of the charged offense.

*Id.* at 604-605 (citations omitted). *See also*, Fed. R. Crim. Pro. 31(c) (permitting a jury to convict a defendant of a lesser offense as long as it is "necessarily included in the offense charged").

Where, however, the lesser offense requires an element not required for the greater offense, no instruction is to be given. *Schmuck v. United States*, 489 U.S. 705, 716, 109 S.Ct. 1443, 1450 (1989).

Applying the tests set forth in *Monger, Walden,* and *Schmuck* to the facts and crimes charged in this case, we find that a lesser-included-offense instruction of simple possession was not warranted as to Counts 1 and 7.

**1.    *Defendant Did Not Make a Proper Request for a Lesser-Included Offense Instruction***

The first prong of the test to determine whether Defendant Colon was entitled to an instruction on a lesser-included-offense focuses on whether a proper request was made for the instruction by the moving party. *United States v. Monger, supra*. Colon contends that a proper request was made for a lesser-included-offense instruction regarding simple possession of cocaine when he orally made his request for the instruction at the close of testimony, and prior to closing

arguments. The Government argues that the request was not proper because it was not made in compliance with the pre-trial Scheduling Order which required that requested jury instructions be submitted in writing at least six business days before the start of trial, nor was it requested at either of the two charge conferences.

However, the Scheduling Order states only the following with respect to jury instructions:

> Counsel **should** draft proposed, substantive instructions, which state the governing rules of law with appropriate case cites. An original and two (2) copies of proposed instructions should be filed with the Clerk's office at least six (6) business days before the scheduled trial date. Copies also should be served upon opposing counsel.

[5/10/99 Scheduling Order (emphasis added).]

Thus, the Scheduling Order provides a guideline but does not state that counsel "shall" or "must" submit proposed jury instructions prior to trial. Additionally, nowhere in the Scheduling Order does it state that a failure to provide the court with proposed jury instructions prior to trial will constitute a waiver of the right to do so at a future time.

However, Fed. R. Crim. Pro. 30 states:

> At the close of the evidence or at such earlier time during the trial as the court reasonable directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time, copies of such requests shall be furnished to all parties. . . .

Fed. R. Crim. P. 30.

Although Defendant arguably was in compliance with Rule 30 insofar as the timing of his oral request is concerned, it is undisputed that no *written request* was ever submitted. Therefore, no "proper" request for a lesser-included-offense instruction was ever made.